## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| United States of America | : | |
| | : | |
| v. | : | No. 3:16-cr-205-VLB-2 |
| | : | |
| Luis Padilla | : | |
| | : | July 19, 2021 |
| | : | |

## MEMORANDUM OF DECISION DENYING
## MOTION FOR SENTENCE REDUCTION [DKT. 238, 245]

Defendant, Luis Padilla, originally proceeding *pro se*, filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) as amended by the First Step Act of 2018 and the Eighth Amendment of the Constitution.  [Pro Se Mot., Dkt. 238].  The Court appointed counsel to aid Mr. Padilla in this motion.  [Order, Dkt. 245].  Thereafter, counsel for Mr. Padilla filed a new motion for sentence reduction under § 3582(c)(1)(A)(i) and the First Step Act.  [Mot., Dkt. 252].  Mr. Padilla argues that "extraordinary and compelling reasons" warrant a reduction in his sentenced due to (1) the growing COVID-19 pandemic, which has made his sentence much more punitive than intended, (2) his medical conditions, which include obesity and hypertension, make him especially vulnerable to serious illness or death if infected with COVID-19, and (3) he has made efforts to improve his education, including efforts made during his Drug Education Assignment.  *Id.*  The Government has filed two oppositions; the first against Mr. Padilla's *pro se* motion, and the second against the motion filed with the assistance of counsel.  [Gov. Opp. to Pro Se Mot., Dkt. 242; Gov. Opp. to Mot., Dkt. 259].   The Government argues that the motions should be denied because Mr. Padilla's history weighs against release, Mr.

1

Padilla's asymptomatic infection and recovery from COVID-19 plus his refusal to accept the vaccine should preclude relief, Mr. Padilla's most recent disciplinary action weighs against relief, and the current situation at FCI Cumberland mitigates the risk of infection.   Mr. Padilla replied to the Government's opposition challenging the notion of reinfection, discussing Mr. Padilla's reasons for refusing a vaccine, addressing his recent discipline, and challenging the Government's position on Mr. Padilla's hypertension.

After reviewing the pleadings and their supporting exhibits, the Court denies Mr. Padilla's motion for a sentence reduction for the reasons provided below.

I.      BACKGROUND

a.   Case Information

On January 18, 2017, Mr. Padilla was arrested pursuant to an arrest warrant and was ordered to be detained pending trial.  [Order of Detention, Dkt. 33].  Then, on July 25, 2017, Mr. Padilla pled guilty to Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C).  [Plea Agreement, Dkt. 129].  This offense conduct provides for a statutory mandatory minimum sentence of five years. Following his change of plea, the Court ordered the Office of United States Probation to conduct a presentence investigation and submit a report.  [Order of Referral, Dkt. 130].  Probation drafted and filed a presentence report ("PSR") prior to sentencing.  [PSR, Dkt. 149].  At Mr. Padilla's sentencing, the parties explicitly stated they had no objections to the facts stated in the PSR and the Court adopted those facts as its finding of fact.  [Sentencing Tr. Jan. 3, 2018 at 2–4].

2

As explained in the PSR, Mr. Padilla was subject to law enforcement surveillance after a witness reported to law enforcement that Mr. Padilla was selling oxycodone in Maine that he obtained from New York.  [*Id.* at ¶ 8].  In October 2016, law enforcement observed Mr. Padilla meeting with an individual who was driving a Chevrolet Blazer.  [*Id.* at ¶ 11].  Law enforcement observed Mr. Padilla enter the Blazer, open a part of the rear passenger seat, and then stuff a package in that area. [*Id.*].  The next day, while conducting surveillance of Mr. Padilla and his cohorts, law enforcement observed the Blazer being followed my Mr. Padilla and others who were in another vehicle.  [*Id.* at ¶ 12].  The Blazer was then pulled over by law enforcement, who uncovered approximately 60 grams of heroin and 100 grams of cocaine base that were in a trap in the very area in which Mr. Padilla was observed stuffing a package the day before.  [*Id.* at ¶¶12–14].  Prior to sentencing, Mr. Padilla authored a letter to the Court identifying his role in the present action as "buying and selling drugs from an acquaintance to another acquaintance." [*Id.* at PDF p.29]. While on pretrial detention at Wyatt Detention Facility, Mr. Padilla publicized the fact that another inmate was going to be testifying against him at trial and identified that person as a "snitch."  [*Id.* at ¶ 17].  That person was threatened by another inmate or inmates due to Mr. Padilla's representations.  [*Id.*].

Prior to the underlying offense, Mr. Padilla had eight prior criminal convictions.  First, at 17 years old, he was arrested then subsequently convicted of robbery in the first degree with the use or threatened use of a dangerous instrument resulting in a sentence of three years in jail to be followed by five-years of supervision.  [*Id.* at ¶ 32].  Second, at 18 years old, he was arrested then

subsequently convicted of attempting to evade payment of cigarette/tobacco tax resulting in a sentence of 10 days in jail.  [*Id.* at ¶ 33].  Third, at 22 years old, he was again arrested then subsequently convicted of attempting to evade payment of cigarette/tobacco tax resulting in a sentence of 5 days in jail.  [*Id.* at ¶ 34].  Fourth, at 23 years old, he was arrested then subsequently convicted of assault in the third degree resulting in a sentence of 1 year in jail.  [*Id.* at ¶ 35].  Fifth, at 24 years old, he was arrested then subsequently convicted of criminal use of drug paraphernalia resulting in a sentence of 180 days in jail.  [*Id.* at ¶ 36].  Sixth, at 27 years old, he was arrested then subsequently convicted of breach of peace in the second degree resulting in a $100 fine.  [*Id.* at ¶ 37].  Seventh, at 29 years old, he was arrested then subsequently convicted of domestic assault resulting in a sentence of 60 days in jail.  [*Id.* at ¶ 38].  Eighth, at 29 years old, he was arrested for and subsequently convicted of unlawful trafficking in scheduled drugs resulting in a sentence of 1 year in jail, suspended after 6 months, to be followed by two years of probation. [*Id.* at ¶ 39].

On February 27, 2018, the Court sentenced Mr. Padilla to a below Guideline sentence of 78 months imprisonment to be followed by 5 years supervised release. [Judgment, Dkt. 189].  Mr. Padilla has served approximately 51 months of his 78-month sentence.

b. <u>Medical Conditions</u>

Mr. Padilla reports that he has both hypertension and obesity, and that these conditions subject him to increased risk of severe illness if infected with COVID-

19.[1]  With respect to Mr. Padilla's reported hypertension, the medical records show that in July 2019 this condition was labeled "resolved."  [Med. Records, Dkt. 255, at PDF p.2].  The notes from that time state that "[i]nmate was previously enrolled in HTN clinic, however, he is on no medication, review of flow sheet showed always BP WNL at this time. Inmate to be discontinued from hth ccc."  [*Id.*].  His most recent record from February 2021 shows that his blood pressure was "excellent." [Opp. to Mot. at PDF p. 9].  Mr. Padilla argues that the report that his hypertension has been "resolved" is inaccurate because there is no cure for hypertension. [Reply at 5].  He cites to a website that says "[t]here is no cure for primary hypertension, but blood pressure can almost always be lowered with the correct treatment.  The goal of treatment is to lower blood pressure levels that will prevent heart disease and other complications of hypertension."[2]  There is no evidence Mr. Padilla has "primary hypertension," he is not on blood pressure medication and his blood pressure was "excellent." At the very least, assuming Mr. Padilla has hypertension, it is well-controlled.  The CDC reports that "having heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly

---

[1] Mr. Padilla did not produce current medical records.  He produced medical records through 2018 and 2019, even though the Court's standing order required him to provide medical records for the last six months.  [Standing Order, Dkt. 239].  However, the Government provided the required medical records in its response.  [Opp. to Mot.].

[2] *Hypertension*, The Free Dictionary, available at: https://medical-dictionary.thefreedictionary.com/Essential+(Primary)+Hypertension (last visited May 14, 2021).

high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19."[3]

With respect to Mr. Padilla's reported obesity, on May 23, 2019, he measured at 75 inches tall and on February 19, 2021, he weighed 311.6 pounds.  [*Id.* at PDF p.18; Opp. to Mot. at PDF p.9].  According to the CDC's online BMI calculator, he has a BMI of 36.9.[4]  Thus, he does fall within the "obese" weight status.  The CDC reports that having obesity "can make you more likely to be severely ill from COVID-19" and "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI."[5]

The impact of Mr. Padilla's medical conditions on his risk of severe illness from COVID-19 was tested in January 2021, when he tested positive for COVID-19 and was entirely asymptomatic.  [Opp. to Mot. at PDF p.11, 25].  Mr. Padilla contracted and recovered from COVID-19.  He was offered but refused the COVID-19 vaccine on March 4, 2021.  [*Id.* at 36, 39].

c.  <u>Confinement</u>

Mr. Padilla is currently confined at FCI Cumberland.  According to the BOP COVID-19 tracking website, as of July 19, 2021, no inmates nor staff are positive

---

[3] *People with Medical Conditions*, CDC.Gov, available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 14, 2021).

[4] *Adult BMI-Calculator*, CDC.Gov, available at: https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited May 14, 2021).

[5] *People with Medical Conditions*, CDC.Gov, available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 14, 2021).

for COVID-19.[6]  No inmates nor staff have died from COVID-19 to date.[7]  190 staff members have been fully inoculated and 634 inmates have been fully inoculated.[8] Based on total population data, approximately 55% of all inmates have been fully inoculated.[9]

## II.    LEGAL STANDARD

Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*   The Court must also consider "the

---

[6] *Coronavirus*, BOP.Gov, available at: https://www.bop.gov/coronavirus/ (last visited July 19, 2021).
[7] *Id.*
[8] *Id.*
[9] *FCI Cumberland*, BOP.Gov, available at:
https://www.bop.gov/locations/institutions/cum/ (last visited July 19, 2021) (report 1,156 total inmates).

factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3583(c)(1)(A). "The defendant bears the burden of showing that [he] is entitled to a sentence reduction." *United States v. Gagne*, 451 F. Supp. 3d 230, 234 (D. Conn. 2020) (citing to *United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020)).

### III.     ANALYSIS

#### a.  Exhaustion

Mr. Padilla states that on December 15, 2020, he requested a sentence reduction from the Warden of FCI Cumberland and he did not receive a reply. [Mot. at 3]. Mr. Padilla attached proof of that request. [Mot. at Ex. A]. The Government agrees that Mr. Padilla has exhausted his administrative remedies. [Opp. to Pro Se Mot. at 1]. The Court agrees.

Therefore, the Court finds that Mr. Padilla has satisfied the exhaustion requirement.

#### b.  Extraordinary and Compelling Reasons

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t); U.S.S.G. 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. *See* U.S.S.G. 1B1.1 (Nov. 1, 2018). The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

(A) Medical Condition of the Defendant.--

8

> **(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.**

**[or]**

> **(ii) The defendant is--**
>> **(I) suffering from a serious physical or medical condition,**
>> **(II) suffering from a serious functional or cognitive impairment, or**
>> **(III) experiencing deteriorating physical or mental health because of the aging process,**
>
> **that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.**

U.S.S.G. 1B1.13, Commentary Application Note 1(A).  Any "other" "extraordinary and compelling reason" may also justify relief.  *Id.* at Commentary Application Note 1(D).   "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).   "[A] district court's discretion in this area—as in all sentencing matters—is broad."  *Id.*

   "[T]he mere existence of COVID-19 in society and the possibility that it might spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Many courts within the Second Circuit "have found an "extraordinary and compelling reason" supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19."  *United States v. Bass*, 462 F. Supp. 3d 176, 187 (N.D.N.Y. 2020) (collecting cases).  When the spread of COVID-19 is properly mitigated, having an

underlying health condition that increases the likelihood of severe illness from COVID-19 does not necessarily justify compassionate release.  *See United States v. King*, 481 F. Supp. 3d 135, 137–38 (W.D.N.Y. 2020); *United States v. Terry*, 493 F. Supp. 3d 225, 227 (W.D.N.Y. 2020).

Here, there are two considerations particularly relevant to deciding whether Mr. Padilla has established "extraordinary and compelling reasons" for his motion for compassionate release: (1) his medical vulnerability and (2) his risk of infection.

     i.     *Medical Vulnerability*

Mr. Padilla has set forth evidence tending to show that he has well-controlled hypertension and he is obese.  The Court is not persuaded that well-controlled hypertension puts him at a risk of severe illness should he contract COVID-19.

The Court is in agreement with both Mr. Padilla and the Government that the CDC recognizes that his obesity could put him at an increased risk of severe illness. However, the CDC guidance merely suggests conditions that "can" or "may" make a person more likely to be severely ill from COVID-19.  The guidance does not suggest that having such conditions means that persons <u>will</u> experience severe illness.  That is the case here.

Mr. Padilla does have two of the medical conditions the CDC recognizes as increasing risk of severe illness, but Mr. Padilla did not experience severe illness. Rather, his course of COVID-19 was entirely asymptomatic.   Thus, while the CDC guidance suggests that Mr. Padilla may be at an increased risk of severe illness, the evidence tends to show he is not.

Mr. Padilla's refusal to accept a COVID-19 vaccine undercuts his fear of infection because the vaccines have been shown to be effective at preventing COVID-19 and help protect against severe illness.[10]  There have been virtually no serious side effects from taking the vaccines and the minor side effects are temporary.[11]  Other courts in this circuit have reached similar conclusions where a defendant has refused to accept a COVID-19 vaccine, instead choosing to risk contracting a potentially lethal virus.  *See United States v. Lewis*, No. 10-CR-392-10(CS), 2021 WL 1873154, at *2 (S.D.N.Y. May 10, 2021); *United States v. Richiez-Castillo*, No. 09-CR-54-RJA, 2021 WL 1746426, at *5 (W.D.N.Y. May 4, 2021); *United States v. Robinson*, No. 17-cr-611-7(AT), 2021 WL 1565663, at *3 (S.D.N.Y. 2021); *United States v. Bullock*, No. 18-CR-528(JMF), 2021 WL 1550424, at *1 (S.D.N.Y. Apr. 20, 2021); *United States v. Colon*, --- F. Supp. 3d ---, 2021 WL 1246187, at *3 (W.D.N.Y. Apr. 5, 2021).

Thus, the Court finds that Mr. Padilla is not at an increased risk of severe illness from COVID-19 even though he has one and perhaps two conditions that the CDC suggest could put him at risk based on his recent infection that was asymptomatic.  His refusal to accept the vaccine diminishes his claim that he fears severe illness if reinfected.

ii.    *Risk of Infection*

---

[10] *COVID-19 Vaccines Work*, CDC.Gov, available at: https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited May 21, 2021).
[11] *Possible Side Effects After Getting a COVID-19 Vaccine*, CDC.Gov, available at: https://www.cdc.gov/coronavirus/2019-ncov/vaccines/expect/after.html (last visited May 21, 2021).

Another important consideration into whether Mr. Padilla's risk of severe illness from COVID-19 constitutes an "extraordinary and compelling reason" for compassionate release is whether he is at risk of infection in the first instance. The evidence tends to show Mr. Padilla is not. The risk of infection at FCI Cumberland is low based on evidence showing that no inmates are presently infected. The reduced infection rate corresponds with reduced infection rates throughout the country. The CDC reports that the rate of COVID-19 infections is consistently decreasing over the last month throughout the country.[12] The decrease in infection rates corresponds with the increase in vaccination rates. As stated above, over half of the inmate population at FCI Cumberland have been fully inoculated. In the general population, over half of the entire population has received at least one dose of a COVID-19 vaccine.[13] As more people become inoculated, the risk of widespread infection decreases.

Though Mr. Padilla has chosen not to protect himself by receiving a COVID-19 vaccine, current CDC guidance suggests that his recent prior infection provides him with some immunity from reinfection. While the science on how reinfection works is not full at this point in time and the CDC does recognize that reinfection occurs, it also finds that reinfection is rare.[14] Mr. Padilla has not provided evidence

---

[12] *Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC*, CDC.Gov, available at: https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (last visited July 19, 2021).
[13] *COVD-19 Vaccinations in the United States*, CDC.Gov, available at: https://covid.cdc.gov/covid-data-tracker/#vaccinations (last visited July 19, 2021).
[14] *Reinfection with COVID-19*, CDC.Gov, available at: https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited July 19, 2021).

showing that the CDC is wrong other than the general questioning of the fullness of the CDC's position.  Thus, Mr. Padilla's risk of infection is even lower due to his recent prior infection.

Mr. Padilla has provided an affidavit where he attests to conditions of confinement at FCI Cumberland during the COVID-19 pandemic.  [*Id.* at PDF pp. 46–54].  His affidavit provides that COVID positive inmates have not been quarantined and have been living amongst non-COVID positive inmates, he has been required to shower with COVID positive inmates, COVID positive inmates are not receiving adequate health care, inmates have not been provided with adequate cleaning supplies, he is unable to follow CDC guidelines for social distancing, and staff and kitchen workers are not wearing masks consistently.  [*Id.*].  To the extent Mr. Padilla is asserting a civil rights claim relating to his conditions of confinement, a motion for compassionate release filed in his criminal case is not the appropriate vehicle for raising such claims.

During his confinement, Mr. Padilla has not attended to his health, choosing to ingest substances injurious to his health and reducing his ability to vigilantly guard his health. Since the filing of Mr. Padilla's *pro se* motion, Mr. Padilla has been charged with possessing drugs and alcohol.  [Disciplinary History, Dkt. 257-2].  He admitted to the charge and was disciplined.  [*Id.*].

Further, his claims of failure to mitigate stands in contrast with the evidence showing that no inmates are infected at FCI Cumberland and there have been no deaths there.  Regardless, assuming Mr. Padilla's allegations are true, the risk posed by failing to mitigate the spread of COVID-19 is greatly diminished when the

13

virus is not within the facility.  That is the case at FCI Cumberland, where there are no reported positive inmate cases.  Thus, Mr. Padilla's claims of FCI Cumberland's failure to mitigate the risk of spread does not support an argument that conditions are dire.

Therefore, the Court finds that Mr. Padilla has failed to establish extraordinary and compelling reasons warranting compassionate release because the evidence tends to show he will not experience severe illness if reinfected with COVID-19 and his risk of reinfection is low.

c. <u>3553(a) factors</u>

Though the Court has already found Mr. Padilla has not established extraordinary and compelling reasons warranting compassionate release, the Court will also consider whether the section 3553(a) factors would warrant compassionate release.

Mr. Padilla argues that his up-to-date history and characteristics reflect his rehabilitation.  Mr. Padilla states that he is now 35 years old and is more mature, he has been working hard in prison, that he is discipline free, and he is utilizing prison programs to the extent possible during the pandemic.

While the evidence does tend to support some of these claims of rehabilitation, it does not support all of them.  First, Mr. Padilla has not taken serious advantage of prison programs that are designed to encourage rehabilitation.  His claim that COVID-19 has limited his access to programs does not explain his failure to utilize these resources for the two years he was in the facility prior to the pandemic.  He has not completed any educational or vocational

programs, nor has he provided a valid reason for not taking advantage of those opportunities.  Second, Mr. Padilla is not discipline free.  Since the filing of Mr. Padilla's *pro se* motion, Mr. Padilla has been charged with possessing drugs and alcohol.  [Disciplinary History, Dkt. 257-2].  He admitted to the charge and was disciplined.  [*Id.*].  This recent discipline mirrors the pattern of misconduct that has led Mr. Padilla to his current incarceration status—possessing drugs.   This evidence tends to show that Mr. Padilla is not as rehabilitated as he is trying to lead the Court to believe.

With that said, the Court does express admiration for Mr. Padilla's efforts toward obtaining his GED and his good work performance evaluations for working as an orderly during the COVID-19 pandemic.  The Court does not believe Mr. Padilla cannot be rehabilitated or that he has not yet made honest efforts towards rehabilitation; rather the Court cannot find that Mr. Padilla has the type of rehabilitation that would warrant a sentence reduction, much less to time served.  Mr. Padilla is encouraged to utilize the resources available to him during his remaining term of incarceration for his and his family's benefit.  These programs can provide him with the skills and resources that will make his reintegration successful.

Further, the other 3553(a) factors weigh against a sentence reduction to time served.  Specifically, the nature and circumstances of the offense and the history and characteristics of the defendant do not justify a sentence reduction.  Mr. Padilla was a member of a multi-state drug trafficking organization that sold heroin and cocaine base.  He has a long criminal history involving the sale of narcotics and

violence.  While on pre-trial detention he obstructed justice.  This conduct and his criminal history justify the sentence imposed.

Mr. Padilla's argument that his sentence has been more punitive than intended and thus justifies a sentence reduction is unpersuasive.  The very nature of prison and similar communal living facilities provides for the increased risk of infection to contagious diseases.  The Court reasonably anticipated that Mr. Padilla would be placed in a communal living facility and thus his risk of infection from a contagious illness would be higher than if in a non-communal living facility.

Mr. Padilla's decision not to be vaccinated undermines his claim that the conditions of confinement are extreme.  Given the demonstrably benign side effects of the vaccine, his refusal of a vaccination does not support his claim that his exposure to and contraction of COVID-19 exceeded significantly the expected severity of confinement .

Further, Mr. Padilla has failed to sustain his burden in showing that his tenure was extraordinary. For example, his claim that he had only limited access to programs during the pandemic is rebutted by the evidence that he did not participate in those programs when they were available.  His claim that he was exposed to severe risk of illness is rebutted by the evidence that he experienced an entirely asymptomatic infection.  His claim that he was in fear of severe illness is rebutted by the evidence showing he has refused to take efforts to protect himself—that is his refusal to accept a highly efficacious vaccine that has virtually no severe side effects and only temporary minor side effects.  The evidence does

not support a claim that his sentence was more punitive.  It certainly is not enough to disturb the finality of the sentence imposed.

Therefore, the Court finds that the section 3553(a) factors do not support a sentence reduction.

I.      CONCLUSION

For the aforementioned reasons, the Court denies Mr. Padilla's motion for reduction of sentence.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated this day in Hartford, Connecticut: July 19, 2021